<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVELYN DAVIS,<br><br>      *Plaintiff*,<br><br>v.<br><br>WORLD INSURANCE ASSOCIATES, LLC, et al.,<br><br>      *Defendants*. | Civil Action No. 22-6392<br><br>**<u>OPINION & ORDER</u>** |

**<u>John Michael Vazquez, U.S.D.J.</u>**

      This case involves alleged employment discrimination. Presently before the Court is Defendants' partial motion to dismiss. D.E. 5. Plaintiff filed a brief in opposition, D.E. 7, to which Defendants replied, D.E. 9.[1] The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion is **GRANTED in part and DENIED in part**.

    I.      **FACTUAL**[2] **AND PROCEDURAL BACKGROUND**

      Plaintiff, an African American woman, worked for Defendant Lewis Chester Associates ("Lewis") for approximately ten years. Compl. ¶¶ 2, 10. In 2020, Defendant World Insurance Associates, LLC ("WIA") acquired or merged with Lewis. *Id.* ¶ 9. Around the time of the merger,

---

[1] The Court refers to Defendants' brief in support of their motion (D.E. 5-1) as "Defs. Br."; Plaintiff's opposition (D.E. 7) as "Plf. Opp."; and Defendants' reply (D.E. 9) as "Defs. Reply."

[2] The factual background is taken from Plaintiff's Complaint. D.E. 1-1. When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

WIA provided Plaintiff with an offer of employment to remain in her same role, and Plaintiff accepted. *Id.* ¶¶ 13-14. After the acquisition, Plaintiff alleges that she performed work for both Lewis and WIA, until she was terminated by WIA on July 30, 2021. *Id.* ¶¶ 14, 23.

Plaintiff states that while employed, she was never formally disciplined and always received positive feedback. *Id.* ¶¶ 11, 14. Throughout her employment, however, Plaintiff contends that she faced "subtle and systemic racism, where African American employees were treated differently than Caucasian employees in terms of pay and benefits." *Id.* ¶ 13. Plaintiff further alleges that Defendants discriminated against her because of her age, and that she was replaced by a younger employee. *Id.* ¶¶ 16-18, 26. In addition, in June 2021, Plaintiff had a medical emergency that required surgery. When Plaintiff returned to work, she claims that WIA failed to discuss reasonable accommodations that could be provided to Plaintiff. Plaintiff pleads that she had physical discomfort, pain and suffering because Defendants did not provide reasonable accommodations. *Id.* ¶ 20, 53. Additional factual details are discussed in the analysis section below.

Plaintiff initially filed suit in New Jersey state court, asserting the following claims against Defendants: (1) age discrimination under the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-5(e), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*; (2) racial discrimination pursuant to the LAD; (3) hostile work environment in violation of the LAD; (4) failure to engage in the interactive process in violation of the LAD and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*; and (5) a violation of Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"). Defendants removed the matter to this Court, asserting federal question jurisdiction based on Plaintiff's ADEA, ADA and COBRA

claims. Notice of Removal ¶ 6, D.E. 1. Defendants subsequently filed the instant motion, seeking to dismiss Counts I, III, IV, and V pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 5.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). A plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

#### 1. ADEA and ADA Claims (Counts I and IV)

Defendants first argue that Plaintiff's ADEA and ADA claims must be dismissed for failure to exhaust administrative remedies. Defs. Br. at 3-4. A plaintiff must comply with the procedural requirements set forth in Title VII before bringing employment discrimination charges under the ADA. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (applying Title VII procedural requirements to ADA discrimination claim). Title VII, and therefore the ADA, require that a complainant file a "charge" and receive a "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC"), before filing suit in district court. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). The ADEA also requires that an individual file a charge with the EEOC, but the individual does not need to receive a right to sue letter before asserting an ADEA claim in court. 29 U.S.C. § 626(d). "Failure to exhaust administrative remedies is an affirmative defense" for ADEA and ADA claims, and "is grounds for dismissal on a Rule 12(b)(6) motion." *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1021-22 (3d Cir. 1997)). Plaintiff does not dispute that she failed to exhaust her ADEA and ADA claims. Plf. Opp. at 4. Consequently, to the extent Plaintiff's claims are based on the ADA and ADEA in Counts I and IV, the claims are dismissed.[3]

#### 2. Hostile Work Environment (Count III)

Next, Defendants contend that Plaintiff fails to plausibly plead a hostile work environment claim under the LAD. Defs. Br. at 4-5. Hostile work environment claims are evaluated "in light of all the circumstances." *Rios v. Meda Pharm., Inc.*, 252 A.3d 982, 987 (N.J. 2021) (internal quotation omitted). To state a hostile work environment claim, a plaintiff must allege that there

---

[3] Counts I and IV are not dismissed to the extent that Plaintiff asserts these counts under the LAD.

4

was conduct that a reasonable person would consider "sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment." *Schiavo v. Marina Dist. Dev. Co., LLC*, 123 A.3d 272, 284 (N.J. Super. Ct. App. Div. 2015) (quoting *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 456 (N.J. 1993)).  A plaintiff must also allege that the conduct would not have occurred but for her protected status.  *Id.*

When assessing the sufficiency of a hostile work environment claim, "[c]ourts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." *Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018) (quoting *Jackson v. Gannett Co.*, No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011)).  Thus, severe or pervasive conduct may be established through "numerous incidents that, if considered individually, would be insufficiently severe to state a claim, but considered together are sufficiently pervasive to make the work environment intimidating or hostile." *Lehmann*, 626 A.2d at 455; *see also Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 308 (D.N.J. 2005) (explaining that incidents are pervasive "if they occur in concert or with regularity"). However, "the LAD is not intended to be a general civility code for conduct in the workplace . . . . Thus simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Mandel v. UBS/PaineWebber, Inc.*, 860 A.2d 945, 955 (N.J. Super. Ct. App. Div. 2004) (quoting *Heitzman v. Monmouth County*, 728 A.2d 297, 304 (N.J. Super. Ct. App. Div. 1999)) (internal quotations omitted).

Here, Plaintiff pleads that she was treated differently than her younger, Caucasian counterparts in terms of pay and benefits.  For example, Plaintiff pleads that when Defendants

lifted their remote work restrictions related to the COVID-19 pandemic in June 2021, Plaintiff had to return to the office but younger employees in her department were accommodated through a new hybrid-work model. Compl. ¶¶ 17-18. That same month, Plaintiff needed emergency surgery. When Plaintiff returned to work, WIA failed to engage in the interactive process to discuss her reasonable accommodations, "and ultimately, failed to accommodate the Plaintiff." *Id.* ¶ 20. Defendants terminated Plaintiff on July 30, 2021. *Id.* ¶ 23.

Thus, Plaintiff essentially argues disparate treatment and failure to make reasonable accommodations in support of her hostile work environment claim. Such actions can give rise to other viable causes of action, but Plaintiff has not provided the Court with authority demonstrating that such actions, without more, may also support a hostile work environment claim. And the Court declines to undertake such research on its own as it would be unfair to Defendants. As a result, Defendants' motion is granted as to Count III.

### 3. Failure to Engage in the Interactive Process Under the LAD (Count IV)

In Count IV, Plaintiff alleges that Defendants failed to engage in an interactive process to determine what reasonable accommodations could be made following Plaintiff's medical treatment in June 2021. Defendants assert that Plaintiff fails to plausibly plead a disability discrimination claim under the LAD. Defs. Br. at 5-6. "Under the NJLAD, an employer must 'make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 237 (D.N.J. 2015) (quoting N.J. Admin. Code § 13:13-2.5). In asserting a failure to accommodate claim, a plaintiff must plead the relevant *prima facie* elements. *Id.* A plaintiff must also establish several elements specific to the second prong of her *prima facie* case. "A plaintiff must allege that "(1) her employer knew of

6

her disability; (2) the plaintiff requested accommodations or assistance for her disability; (3) the employer made no good faith effort to assist; and (4) that the plaintiff could have been reasonably accommodated but for the employer's lack of good faith." *Fitzgerald*, 92 F. Supp. 3d at 237.

Plaintiff does not sufficiently allege she was handicapped or disabled under the LAD or requested accommodation upon her return to work. Without these allegations, Plaintiff fails to state a disability discrimination claim. *See, e.g.*, *Syder v. Express Servs., Inc.*, No. 20-11013, 2021 WL 3674345, at *5 (D.N.J. Aug. 18, 2021) (dismissing failure to accommodate-based LAD claim because the plaintiff failed to allege that he made a request for an accommodation). Defendants' motion, therefore, is granted on these grounds and Count IV is dismissed.

### 4. COBRA Claim (Count V)

In Count V, Plaintiff alleges that Defendants failed to notify Plaintiff of her rights under COBRA or timely process her request for continued health care coverage.[4] Compl. ¶ 57. Defendants maintain that the Severance Agreement and General Release (the "Severance Agreement") notified Plaintiff of her COBRA eligibility and attach a copy of the document as an exhibit to the instant motion. Def. Br. at 6-7; Pacholec Decl., Ex. B. Defendants further argue that the Court can consider the Severance Agreement in deciding their motion because Plaintiff expressly references the document in the Complaint. Def. Br. at 7 n.3. In deciding a Rule 12(b)(6) motion to dismiss, a court ordinarily considers only the factual allegations, exhibits attached to the complaint, and matters of public record. A court may also rely on "a document *integral to or explicitly relied* upon in the complaint." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388

---

[4] In Defendants' reply, they fail to address Plaintiff's COBRA claim and do not list Count V as a count that should be dismissed. Thus, Defendants appear to abandon their argument to dismiss Count V. Because this is not explicitly stated, however, the Court addresses Defendants' initial argument to dismiss Count V.

(3d Cir. 2002) (emphasis in original) (citation omitted).  The Complaint references the Severance Agreement, Compl. ¶ 27, so the Court will consider the document.

The Severance Agreement provides that Plaintiff will receive "a COBRA Continuation Coverage Election Notice . . . at your home address within the next 14 Business Days" that includes "information regarding COBRA coverage and alternative options."  Pacholec Decl., Ex. B.  While Plaintiff received initial notice that she had rights under COBRA through the Severance Agreement, nothing in the Severance Agreement indicates whether Plaintiff received the additional information or if Defendants timely processed Plaintiff's request for continued coverage.  Defendants do not seek to dismiss these aspects of Plaintiff's COBRA claim.  Therefore, even considering the Severance Agreement, Plaintiff states a COBRA claim.  Defendants' motion is denied with respect to Count V.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 28th day of March, 2023

**ORDERED** that Defendants' motion to dismiss (D.E. 5) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendants' motion is **GRANTED** as Plaintiff's ADEA, ADA and LAD disability discrimination and hostile work environment claims; and it is further

**ORDERED** that Count I, to the extent it is premised on the ADEA, and Counts III and IV are **DISMISSED**; and it is further

**ORDERED** that Plaintiff is granted leave to file an amended pleading as to the dismissed LAD claims.  Plaintiff has thirty (30) days to file an Amended Complaint, if she so chooses, that is consistent with this Opinion & Order.  If Plaintiff fails to file an Amended Complaint, the failure

to engage and hostile work environment LAD claims will be dismissed with prejudice; and it is further

**ORDERED** that Defendants' motion is otherwise **DENIED**.

_____
John Michael Vazquez, U.S.D.J.